ALBANY,
August, 1810.

JACKSON, *ex dem.* DUNBAR and others, *against* TODD.

JACKSON
v.
TODD.

THIS was an action of ejectment, for lot No. 25. in the township of *Marcellus*. The cause was tried at the *Onondaga* circuit, the 21st of *June*, 1809, before Mr. Justice *Thompson*.

The plaintiff gave in evidence, an exemplification of the award of the *Onondaga* commissioners, dated the 18th of *November*, 1800, by which the lot in question was awarded to *William Thorn*, one of the lessors of the plaintiff.

The defendant produced a *dissent* to the award, signed by him, and filed in the office of the clerk of *Onondaga* county, the 27th of *May*, 1802; and he was then, and has since continued in possession.

The plaintiff then gave in evidence, an exemplification of the letters patent to *William Dunbar*, one of the lessors, for the same lot, dated the 8th of *July*, 1790; a deed from *William Dunbar* to *Zebulon Macey*, dated the 12th of *March*, 1784, proved by the subscribing witness, and duly recorded; also, an exemplification of a deed, from *Zebulon Macey* to *Zephaniah Platt*, proved by *William Thorn*, the subscribing witness, dated the 22d of *June*, 1794; also, a quit-claim deed from *Zephaniah Platt* to *William Thorn*, dated the 5th of *September*, 1797, endorsed on the deed to *Platt*, and acknowledged by him, and recorded.

*Dunbar*, an infant, in 1784, conveyed a lot of land, in the military tract, to *Macey*, who conveyed the same, in 1794, to *Platt*, who conveyed it to *Thorn*. *Dunbar* came of full age in 1785, and, afterwards, in 1791, without having made any entry on the land, or done any act to avoid the deed to *Macey*, executed another deed for the same lot to *Brooks*; and the executors of *Brooks*, afterwards, in 1794, conveyed the same lot to *Isaacs*, who contracted to convey the same to *Cody*, who assigned the contract to *Todd*, who entered into possession, in 1795, and, afterwards, in 1797, received a deed from *Isaacs*. On the 18th of *November*, 1802, the *Onondaga* commissioners *awarded* the lot to *Thorn;* and *Todd*, in *May*, 1802, filed his *dissent*, pursuant to the statute.

In an action of ejectment brought on the demise of *Dunbar*, *Macey*, *Platt*, and *Thorn*, against *Todd*, to recover the lot, it was held, that though the deed from *Dunbar* to *Macey* was voidable, *Todd* could not avail himself of the subsequent deed from *Dunbar* to *Brooks*, to avoid it; and that, though the dissent of *Todd* would enure to the benefit of those from whom he derived his estate, yet, as it did not appear that the executors of *Brooks* had any authority to convey, no privity of estate was shown between him and *Todd;* and that, as by the award in favour of *Thorn*, the deed to *Brooks* was rendered inoperative, no dissent having been filed by the heirs of *Brooks*, the award was conclusive against them, and so *Todd*, could not avail himself of the deed to *Brooks*, as a subsisting outstanding title; and that, though the deed to *Thorn*, on account of the adverse possession of *Todd*, was void; yet the award of the commissioners was on the *title*, and being in favour of *Thorn*, it must extend and enure to the benefit of all those from whom he derived title, and confirmed the deeds to *Macey* and *Platt*, who were not bound to enter any dissent, as the award was in favour of their alienee.

The defendant then gave in evidence a deed from *William Dunbar*, the patentee, to *Isaac Brooks*, for the lot in question, dated the 12th of *September*, 1791, the execution of which was proved, by *Stephen Hendrickson*, a subscribing witness.

The defendant next offered in evidence, a deed from *Stephen Hendrickson, Charles P. Rogers*, and *Mary Brooks*, the executors of *Isaac Brooks*, to *Benjamin Isaacs*, dated the 10th of *September*, 1794, for the same lot. The plaintiff's counsel objected to the reading of the deed, unless the last will of *Isaac Brooks* was also produced; but the objection was overruled by the judge, who permitted the deed to be read, not as evidence that any estate passed by the deed, but to show, that the possession of the defendant might be adverse to the lessors, if claimed under that deed.

The defendant also read in evidence, an agreement between *Benjamin Isaacs* and *Joseph Cody*, dated the 12th of *May*, 1795, by which *Isaacs* covenanted to execute a deed to *Cody*, for the lot in question, on receiving the sum of 1,500 dollars, which *Cody* covenanted to pay. On the 22d of *March*, 1797, *Cody* assigned this contract to the defendant, who paid up the instalments due to *Isaacs*, on the 8th of *April*, 1797.

In 1795, *Cody* settled on the north-west corner of the lot, claiming under the contract with *Isaacs*, built a log-house, and cleared about 7 acres; and in the same year, the defendant agreed with *Cody* for the purchase of 500 acres, part of the lot, and took possession on the south side of the road, and has since continued in possession.

The defendant also gave in evidence, a deed to him for the same lot, from *Benjamin Isaacs* and *Samuel Beebee*, dated the 17th of *April*, 1797, which had been duly acknowledged, and recorded. He then offered to prove that *William Dunbar*, the patentee, when he gave the deed to *Zebulon Macey*, the 12th of *March*, 1784, was an infant; this was objected to by the plaintiff's counsel, unless the defendant would also prove

that the infant, within a reasonable time after coming of age, made an entry on the premises, or did some act to avoid the deed to *Macey;* but the judge overruled the objection. It was then proved that *William Dunbar,* the grantor, was born in *June,* 1764.

The judge charged the jury, that if they found that *William Dunbar,* the patentee, was of the age of 21 years, on the 12th of *March,* 1784, to find a verdict for the plaintiff generally; but if they should find, that he was within the age of 21 years, at that time, to find a verdict for the plaintiff, and also certify, that the patentee was an infant, at the time of executing the deed. The judge, also, charged the jury, that as *William Thorn* claimed under the other lessors, their rights were not concluded by the award, although they had not dissented thereto; but that the plaintiff could only recover on the demise of *Zebulon Macey,* as the defendant's possession was adverse, when the subsequent deeds were executed.

The jury found a verdict for the plaintiff; and that *William Dunbar,* on the 12th of *March,* 1784, was under the age of 21 years.

*Ruggles,* for the plaintiff. It would be inconsistent and absurd, to require *Macey* and *Platt,* from whom *Thorn* derived his title, to enter a dissent to an award in his favour.

The principal question is, whether the deed executed by *William Dunbar,* the 12th of *March,* 1784, when he was an infant, did not continue valid; unless some act or dissent by him, after he became of age, was proved. A deed executed and delivered by an infant is good, until it is avoided by him. All deeds or acts in writing, executed by infants, which take effect by delivery, are voidable only.* To such a deed, the party must plead *infancy,* not *non est factum.* The power of rescinding or avoiding the deed rests with the infant, who ought to give notice to the grantee, so that he may

* *Zouch, ex dem. Abbott,* v. *Parsons,* 3 *Burr.* 1804.

ALBANY,
August, 1810.

JACKSON
v.
TODD.

know that it is the intention of the infant to avoid it. The grantee, to every legal purpose and intent, is seised and possessed of the premises, until he is lawfully dispossessed. He may, by virtue of the deed, maintain trespass. Can he, then, be dispossessed by any act of the grantee, wholly unknown to him? The estate of the grantee is as good as an estate depending on a condition subsequent, which is good until the condition is performed by which it is defeated. As an entry for condition broken, avoids the estate, from the time of its creation; so a plea of infancy avoids it from the time of the deed.

Where an estate depends on a limitation, no entry is necessary: and in cases of advowsons, rents, commons, remainders, and reversions, where no entry can be made, a claim must be made on the land, or at the church,* which is notice to the party.

An estate, granted by an infant, is more permanent and important, than an estate at will, to determine which, a notice to the tenant is necessary.†

Again, seven years elapsed, after *William Dunbar* came of age, before he executed the deed to *Brooks*, or did any act to avoid the deed to *Macey*. Admitting, then, that he could avoid the deed to *Macey*, merely by executing a deed to a third person, after he had come of age, still, I contend, that by the lapse of time, he must be considered as having acquiesced in, and confirmed the first deed. He ought to avoid the deed, within a reasonable time, after he comes of age. A lease made to an infant is voidable; but he must waive the land before rent day comes.‡ So, if an infant makes a lease for years, and at full age, says to the lessee, " God give you joy of it," it is a confirmation of the lease;§ and if he receives rent, it is an affirmance.

If an infant exchanges lands, and enters on those acquired by the exchange, and continues to hold them after he attains full age, it is an affirmance, and the exchange

* Co. Litt. 218. a. 2 Cruise, 49. tit. 13. c. 2, s. 41—66. 2 Bl. Comm. 155, 156.

† 2 Bl. Comm. 146.

‡ Kelsey's case. Cro. Jac. 320. Bro. 120. 4 Bulst. 69. 2 Bac. Abr. 12. tit. Leases, (B.) 3 Bac. Abr. tit. Infancy, (I.) 9 Vin. Abr. 386. tit. Infancy,(D.) pl. 27. § 4 Leon. 4. 4 Bac. Abr. tit. Infancy, (I. 8.) (D.)

6

becomes perfect.* If an infant has an election to make, he must make it within a reasonable time after he comes of age. In the case of *Doe* v. *Smith*,† it was held, that a year was too long a time; and that a week or fortnight was a reasonable time. All these cases show, what is certainly just and reasonable, that where an infant has a right, on arriving at full age, to avoid his contract, or exercise an election, he ought to do it within a reasonable time ; otherwise, his silence will be construed into an affirmance, and the deed or estate will be perfect.

ALBANY,<br>August, 1810.<br><br>JACKSON<br>v.<br>TODD.<br><br>* 4 *Cruise*, 142.<br>tit. 32. c. 8. s. 7.<br>*Co. Litt.* 51. b.<br>2 *Vern.* 224, 225.<br>1 *Eq. Cas. Abr.*<br>282.<br>† 2 *Term Rep.*<br>436.

*Cady* and *Baldwin*, contra. The deed from *Dunbar* to *Macey*, must operate as a bargain and sale, or a covenant to stand seised to the use of the bargainee. An entry is not necessary to avoid a common law conveyance. An actual entry is only necessary to avoid a fine.‡ A feoffment being executed by livery of seisin, an entry is said to be necessary, in order to avoid it. But in case of a feoffment, by an infant, an entry was not necessary ; for he might, after he became of age' have his writ of entry *dum fuit infra ætatem*.§ Even if an entry was necessary to avoid a feoffment, it is not necessary to avoid a bargain and sale, or covenant to stand seised to the use of the bargainee. If an infant gives a bond, and an attempt is made to enforce the payment of it, he must plead infancy ; so, if he executes a deed of bargain and sale, and it is attempted to be enforced against him, he may plead infancy. No entry is necessary. Indeed, considering the state of the country in which the land was situated, it was impossible. It was a perfect wilderness, and not even surveyed, until by an order of the legislature, in 1790. An entry would have been of no use. It would not have been an act of notoriety ; for there was no person to take notice of an entry. The bargainee was not in possession ; no man was in possession in that part of the state. If an entry was impossible or useless; what

‡ *Goodright* v.<br>*Cater, Doug.*<br>477. 485.<br><br>§ 3 *Reeves's History of English Laws*, 32, 33.

ALBANY,
August, 1810.

JACKSON
v.
TODD.

act could be required of *Dunbar*, in avoidance of his deed?

An infant, we contend, may avoid a deed, at any time after coming of age, unless there is a possession of 20 years. If an infant bargain and sell lands, by deed indented and enrolled, he may avoid it, at any time.*

*\* 2 Inst. 673.*
*3 Bac. Abr.*
*607. tit. Infancy, (I.) 5.*
*Shep Touch.*
*221. (224.) note 4.*
*† 1 Str. 94.*

In the case of *Frost* v. *Wolveston*,† where an infant covenanted to levy a fine by a certain time, to certain uses, and before he came of age he levied the fine, and by another deed, made at full age, he declared it to be to other uses; the court held, that the last deed should be the one to lead the uses. This is a strong case, to show that the second deed is to control and avoid the first.

*‡ 2 Salk. 674. 4*
*Co. 123. Beverly's case.*
*Mod. 310, 311.*

In the case of *Thompson* v. *Leach*,‡ it is said, that the bond of an infant, or *non compos*, is void, because the law has appointed no act to be done to avoid it; and the only reason why the party cannot plead *non est factum* is, because the cause of nullity is extrinsic, and does not appear on the face of the deed. In *Jack-*

*¶ 3 Johns. Rep.*
*388. 395.*

*son, ex dem. Ludlow,* v. *Myers,§* it is said to have been the generally received opinion, in 1788, that a bargain and sale required an enrolment, to render it effectual.

The present case is compared to an estate upon a condition subsequent; but there it is absolutely necessary that the person should express his determination to defeat the estate; and that determination is manifested by an entry. A second deed by an infant, after he comes of age, equally manifests his intention to avoid the first deed.

Again, it is compared to an estate at will, in which notice is required to be given to the tenant, before it can be determined. An estate at will is greater than an estate created by an infant, for the tenant at will is entitled to emblements; but an infant may put an end to the estate, at his pleasure.

*Blackstone** says, if an infant make an alienation of his lands, and the alienee enters, and keeps possession; this, as the alienation is voidable, is, after avoidance, wrongful, and, therefore, a *deforcement*. But in the case of a deforcement, there is no remedy by entry, but the party is driven to his action. If an infant has 20 years to bring his writ of entry *dum fuit infra ætatem*, he cannot be barred by any implied acquiesence. Though the deed was executed in 1784, the patent was not issued until 1790, before which time there had been no survey or location made. The execution of a deed is as strong an expression of the intention of the infant to avoid the first deed, as an entry on wild and vacant land. The court must presume a fraud in *Dunbar*, or consider his second deed as a solemn expression of his intention to avoid the first. As *Macey* knowingly purchased of an infant, he has no reason to complain of this act of avoidance.

Again, we contend, that no person can disturb the possession of the defendant but *Thorn*, in whose favour the award" was made. The act of the legislature† has declared, that the award of the *Onondaga* commissioners shall be final and conclusive, unless the person conceiving himself aggrieved by such award, shall dissent thereto within two years, and, if he is not in possession, bring his action to establish his right to the land. If the party dissenting is in possession, then, the party in whose favour the award is made, must bring his action within three years. The language of the act is explicit and imperative. No person can bring an action, but the person in whose favour the award is made, or the person who has filed his dissent. *Macey* and *Platt*, not having dissented, no action can be maintained in their names. It is said, they ought not to be concluded, because *Thorn* claimed title through them. But, can the court say, that if *Platt* should recover, that such recovery would be in trust for *Thorn ?* If the award in favour of

ALBANY,
August, 1810.

JACKSON
v.
TODD.

* 3 *Bl. Comm.*
178—185.

† *Rev. Law*,
vol. 2. p. 266.
sess. 20. c. 51

*Thorn*, was not conclusive against all the world, except those who filed their dissent according to the statute, against whom is it conclusive? Is it conclusive against the patentee? The object of the legislature, in passing this act, was to put an end to all controversies about the titles to these military lands.

*Ruggles*, in reply. There is, in effect, no difference between a conveyance by feoffment and livery of seisin, and a deed of bargain and sale. The latter vests the bargainee with every seisin and right, as fully and absolutely, to all intents and purposes, as the former mode of conveyance. The one has been substituted for the other, as the most convenient.

Why is an entry on land necessary, in order to avoid a fine? A *fine* is a conveyance in a court of record; not by a livery of seisin. There is as much reason to require an entry, to avoid a bargain and sale, as to avoid a fine. There ought to be some act of notoriety; something to make known to the bargainee, the intention of the bargainor to avoid his deed. Though the land was wild and vacant, so that an entry would not be notorious; yet the bargainee was seised in law, and ought to have had some notice from the infant, of the avoidance of his contract. If a person will lie by, in such a case, for such a length of time, he ought not to be allowed, afterwards, to assert his right of avoidance or election.

SPENCER, J. delivered the opinion of the court. Several points were made on the argument of this cause; but, from the view I have taken of it, it will be unnecessary to consider all of them. The title on which the plaintiff relies for a recovery consists, 1. Of an award in favour of *William Thorn*; 2. Of a deed from *William Dunbar*, the patentee, to *Zebulon Macey*, of the 12th of *March*, 1784; and, 3. Of a deed from *Macey* to *Z. Platt*, of the 23d of *June*, 1794.

The defendant having dissented from the award, within two years after the making thereof, and being then in the actual possession of the lot, or a part of it, as to him the award became inoperative, and the lessors of the plaintiff must recover, by virtue of their title, independently of the award. *Prima facie*, a title has been made out, by the conveyance from *Dunbar* to *Macey*, by the deed from *Macey* to *Platt*, and by his deed to *Thorn*.

The defence to this title is, that the deed from *Dunbar* to *Macey* was executed during the minority of *Dunbar*; and that after his attaining full age, he gave a deed to *Brooks*, dated the 12th of *September*, 1791. If the deed from *Dunbar* to *Macey* is voidable, can the defendant avail himself of the conveyance to *Brooks* to avoid it? The 3d section (*Laws*, vol. 2. *sess.* 20. *c.* 51. 266.) of the statute to settle disputes concerning the titles to lands, in the county of *Onondaga*, renders an award of the commissioners, upon every claim or controversy respecting any lands in the county of *Onondaga*, after the expiration of two years from the making thereof, binding and conclusive against all persons, except such as, conceiving themselves aggrieved thereby, shall, within two years, dissent from the same, and give notice thereof to the commissioners, and file the same in the office of the clerk of the county of *Onondaga*.

There exists no privity of interest or estate between *Isaac Brooks* and the defendant; for, although certain persons, styling themselves executors of the last will of *Brooks*, have conveyed to *Benjamin Isaacs*, the lot in question, they have shown no authority derived from his will, to make that conveyance; and, therefore, although the dissent by the defendant would enure to the benefit of those from whom he derived his estate, the defendant cannot claim under *Brooks's* title; and it follows, that as the heirs of *Brooks* have not dissented from the award, it has become binding and conclusive against them. Nor can the defendant set up *Brooks's* title

ALBANY,
August, 1810.

JACKSON
v.
TODD.

as an oustanding one ; for such title, to defeat a recovery in ejectment, must be a subsisting title.   The title under *Brooks* is not a subsisting one, the award of the commissioners in favour of *Thorn* having nullified it.   This award, though not to operate against the defendant, does operate against any pretended title under which he may seek shelter, by the very terms of the act.

It was, therefore, unavailing for the defendant to give in evidence a deed which had ceased, by force of this act, to have effect.   That deed could operate in this case only as an outstanding title in third persons, putting the statute out of question, and not as conferring a title on the defendant.   In consequence of there being no dissent on the part of those claiming under *Brooks*, the award, by the act, has become binding and conclusive against that title, which must now be received, as if it never existed.   Had the defendant shown a privity between himself and *Brooks*, then he could have availed himself of *Dunbar's* deed to *Brooks;* and the question, whether that deed avoided the deed to *Macey*, would then have arisen.

The deed to *Brooks* being out of the case, the next question is, whether there should not have been a dissent from *Macey* and *Platt*, notwithstanding the award was in favour of their alienee.   It would be the heighth of absurdity to give the act a construction which should require them to enter their dissent to an award confirmatory of their title.   They could not, within the purview of the act, have been aggrieved by the award, for the commissioners in awarding *Thorn* to be seised of the lot, must have done so, because he had shown these conveyances ; and, consequently, the award was substantially in affirmance of their deeds.   It is true, that in consequence of an adverse possession in the defendant, when *Thorn* received his deed from *Platt*, that deed has now become inoperative ; yet as the paper title was only in question before the commissioners, the award in favour of *Thorn* enured to the benefit of those from whom he derived that paper title.

The defendant, then, can be regarded in no other light, than as a possessor without title; and consequently, he cannot be admitted to set up the infancy of *William Dunbar* to defeat the deed, which is only voidable by him, or those who have derived an interest under him, which the defendant clearly has not.

The court are, therefore, of opinion, that the plaintiff is entitled to judgment.

*Judgment for the plaintiff.*