MULOCK *vs.* MULOCK.

Cases of adultery are generally made out from circumstances: but they are circumstances leading to the fact, by fair inference and necessary conclusion.

Cruelty and adultery are entirely distinct causes of divorce; and they cannot be combined in the same bill as substantive causes of complaint.

But it seems that immediate acts of cruelty which lead strongly to the conclusion of the adultery's being contemplated, may be received in evidence, on a trial at law.

A judge is right, upon the trial of a feigned issue, in allowing proof of acts of cruelty for the purpose of showing:—1st. That the affections of a husband were alienated from the wife; 2d. A course of abuse from the time of his connection with another woman, down to, and terminating in, a separation from his wife; and, 3d. That such cruelty resulted from such connection and was part of a plan contrived between them, to drive the wife from home, in order that the improper intimacy might be more easily carried on.

The rules which formerly governed courts of law in granting new trials, upon the ground of testimony improperly admitted or rejected, has never been adopted in equity.

The object of a feigned issue in this court is to satisfy the mind of the equity judge upon matters of fact; and the object is attained, when his conscience is satisfied that, at the trial, justice has been substantially done.

If, from the whole case, there is sufficient to show the verdict was substantially right, a new trial will not be granted.

Costs of the suit may be taxed after the court has refused to grant a new trial and made a decree, though before a master has reported as to an amount for alimony.

THE circumstances of this case sufficiently appear in the opinion of the court.

Mr. *D. Graham* and Mr. *H. Maxwell* for the complainant.

Mr. *J. Anthon* and Mr. *O. Hoffman* for the defendant.

THE VICE-CHANCELLOR. The bill in this case is filed by the wife against the husband, for a divorce, dissolving the marriage contract, on the ground of adultery.

A feigned issue has been tried. The jury have found for the plaintiff; and the proceedings are returned to this court, with a certificate of the presiding judge, that the verdict was fully supported by the evidence and was satisfactory to him.

A motion, however, is made for a new trial. It is applied for on two grounds: 1st. Because the verdict is not warranted by the evidence ; or, in other words, that there is no evidence of any adultery committed by the husband; and, 2d. That the judge admitted improper testimony to go to the jury. I will briefly examine these points in their order.

In the first place, it may be observed, that it is not necessary to prove directly the fact of adultery. If it were so, there are but few cases in which the charge of it could be substantiated. In most instances, therefore, the fact is made out from circumstances; but they are circumstances involving the fact by fair inference, and lead to it as a necessary conclusion. " The " only general rule," says Lord Stowell, 2 *Haggard's Consist. R.* 2. "that can be laid down upon the subject, is, that the circum- " stances must be such as would lead the guarded discretion of a " reasonable and just man to the conclusion, that the act had been " committed." On looking into the case before me, I do not disco- ver any direct evidence of the fact. Still, after a careful exami- nation of the circumstances, as proved to the jury, and which need not be here repeated, (independent of and entirely aside from what is deemed by the defendant's counsel as objectiona- ble testimony,) I cannot perceive how the jury could avoid the conclusion they came to, nor how any reasonable man can doubt the existence of the fact charged against the defendant. There are numerous cases to be met with in the reports of the ecclesiastical courts of England, where the able and discrimi-- nating judges who preside in them, upon circumstantial evidence of a less decisive character than the evidence given in the pre- sent instance, have, without hesitation, pronounced in favor of a divorce. If, therefore, the case was before me simply upon that question, I should not feel myself at liberty to disturb the verdict.

But, it is said, improper testimony was admitted ; and, there- fore, the verdict should be set aside. The evidence alluded to

1831.

MULOCK
v.
MULOCK.

consisted of acts of cruelty or personal violence of the husband towards the wife. . It was offered, as stated in the case, with a view to show, an alienation of affection on the part of the defendant towards his wife from the period of his first acquaintance with the object of his, adulterous connection, and to prove that the banishment of the wife from her home was the result of a plan to introduce the other into his house, the better to continue his illicit intercourse with her. The judge decided that the plaintiff might prove acts of cruelty, for the purpose of showing, 1st. That the affections of the defendant were alienated from the wife ; 2d. A course of abuse from the time of his connection with the other woman down to and terminating in the separation from his wife ; and, 3d. That such cruelty resulted from his conection with the other woman, and was part of a plan contrived between them to drive the wife from his house, in order that the improper intimacy might be more easily carried on.

It is objected to this sort of evidence, that, of itself, it affords a ground for a limited divorce, and if such evidence be admited where adultery is charged, a wife has only to file a bill charging adultery, and upon proof of cruelty, she may obtain a decree very different from the one she would be entitled to for the cause of cruelty alone. It is undoubtedly the practice in the English courts to admit evidence of cruelty when cruelty and adultery are, at the same time, charged (as they may be) in the libel : *Poynter on Div.* 216. And this arises, because the divorce granted in either case is the same. It is merely a separation, and not a dissolution, of the marriage contract, and the reason for admiting proof of cruelty in such cases is, the probability which it adds to the well foundedness of the charge of adultery. It is also of some consequence, say the judges, in determining the question of permanent alimony. But under the laws of this state in relation to divorce, and the practice which we must necessarily adopt in proceedings of this sort, the rule as to admitting such testimony must be more guarded. With us, cruelty and adultery are entirely distinct causes of of divorce ; and I should not hesitate to say, that they cannot be combined in the same bill as substantive causes of complaint.

They admit of a different mode of answering; and where the charges are denied, the mode of trial is also different. What would be admissible, therefore, in the English courts, under their system, would be improper and inadmissible in ours. Still, I do not mean to say the court may not, upon the trial and when a charge of adultery is in issue, receive evidence of acts of cruelty in connection with and to corroborate other circumstances which lead stongly to the conclusion that the adultery was in contemplation and was actually committed. The acts of cruelty to be shown in evidence would have to be immediately and not remotely connected with the circumstances of adultery, so as to form one series of aggression on the part of the husband. As, for instance: suppose that, after a husband's intimacy with a paramour and while he was pursuing a course of conduct totally inconsistent with his duty and fidelity as a husband (with evidence of some particular act which might well be construed into a consummation of the offence or, at least, afford a strong presumption against him) he should become abusive towards his wife and follow it up by blows or other personal injury, so as, finally, to drive her from his house, and should then receive the other into it:—I think this would be evidence proper to go to the jury, as showing, in the first place, the alienation of the husband's affections, and, in the second place, the *quo animo* or intention with which the cruelty was inflicted—a just ground of inference would in such case be afforded that his intimacy with the other woman was of an illicit and adulterous character, although it might not of itself and disconnected with other circumstances amount to evidence of adultery.

Under this view of the case, I am of opinion the judge was substantially right in the decision he made respecting the admission of such testimony. Whether the testimony, when given, came within the scope of the plaintiff's offer or was within the rules laid down by the judge, I think is much more doubtful. If it did not, he should have instructed the jury to disregard it. But be that as it may, from the view which I have taken of this case and from the well settled principles of equity in relation to the granting of new trials on feigned issues,

3

CASES IN THE

1831.

MULOCK
v.
MULOCK.

I do not feel myself warranted in disturbing the present verdict. It is well understood, that the rules which formerly governed courts of law in granting new trials, upon the ground of testimony improperly admitted or rejected, have not been adopted by the court of chancery. Even courts of law have latterly undertaken to judge for themselves of the materiality of the evidence found to have been *improperly* admitted or rejected ; and where they have been satisfied no injustice has been done and the verdict would have been the same with or without such evidence, they have refused to grant a new trial, *Lord Teynhan* v. *Tyler*, 6. *Bingham*, 561. The object of a feigned issue is, to satisfy the mind of the equity judge upon matters of fact ; and the object is attained, when the conscience of the judge is satisfied that, at the trial, justice has been substantially done. This is the principle laid down in *Collins* v. *Hare*, 1 *Dow's R. New Series*, 139 ; *S. C. Bligh's R., N. S.* 106. In *Barker* v. *Ray*, 2 *Russ. R.* 63, Lord Eldon says, this court, in granting or refusing new trials proceeds upon very different principles from those of a court of law ; and that it has been ruled over and over again, that if on a trial of an issue a judge reject evidence which ought to have been received, or receive evidence which ought to have been rejected, although in that case a court of law would grant a new trial, yet, if this court is satisfied the verdict ought not to have been different, it will not grant a new trial merely upon such grounds. In *Bootle* v. *Blundell*, 19 *Ves.* 503. and *Hampson* v. *Hampson*, 3, *V. & B.* 41. the same principle appears. So, also, in *Savage* v. *Carroll*, 2 *Ball & B.* 444., where it was insisted the verdict had not been supported by the evidence. Lord Manners refused to set it aside ; and acted upon the principle that, from the whole case, there was sufficient to show it was substantially right. I must do the same here ; and, therefore, refuse the defendant a new trial. The consequence of a new trial would be a prolongation of this unhappy controversy, without any beneficial purpose—for I am perfectly satisfied the defendant could not hope for a different result. And it can make very little difference to him whether the decree be for a dissolution of the marriage contract or a separation from bed and

*And see, Apthorp* v *Comstock*, 2 *Paige's C. R.* 483.

board. The parties are already too widely separated ever to admit of a reconciliation; and to the complainant it may be all-important, as respects the future, that she should not be obliged to retain "the undefined and dangerous character of a wife without a husband."

She is entitled to be discharged from the obligations of the marriage contract. A decree must accordingly be entered dissolving the marriage; and a reference be had to a master to ascertain what allowance she may be entitled to for alimony.

---

The decretal order herein was entered and notice of taxation of costs given before the proceedings in regard to alimony were perfected. The defendant, before the Vice-Chancellor, as taxing master, objected to the taxation of the costs, as being premature: that the decree could not be enrolled and be considered as perfected until the matter of alimony had been set at rest: and, that the opposite party must "*clean the record*" before the decree could be docketed. The Vice-Chancellor decided against the objection. He was of opinion the merits of the decree were perfected; and that the opposite party might elect to tax the costs which had accrued upon the merits or wait until the master's report, as to alimony, was confirmed. His honour said, the only thing which could have weight was the trouble of another taxation: but that he would take care, on the second taxation, to protect the defendant from charges which were covered by the present.*

* "The decree *from the time of pronouncing* is binding, and an act of the court; all the rest is a sort of ministerial or clerical act." 2 *Harr. Pr.* 165. 6th Edit.