By the Court.
Duer, J.
We have examined the complex' and somewhat difficult questions which this case involves, with all the attention of which we are capable, and although we shall not venture to affirm that the conclusions to which we have been led are free from error, they are at least satisfactory, and upon most of the points entirely so, to our own minds.
The object of the bill is to compel the specific performance of a contract for the purchase of four lots of ground in this city. The lots in question were part of the estate of Jacob G. Dominick deceased, and were sold at public auction by his administrator with the will annexed, in--the supposed execution of a power of a sale contained in the will. The purchasers, the defendants John Michael and Morris Michael, declined to accept *396 a conveyance from the administrator, being advised by their counsel that he had no authority to sell, and the agent of the children óf the testator, to whom the fee was 'devised by the will, then entered into a new contract by which' he bound himself to deliver to the purchasers, upon certain, terms, full covenant deeds within a limited time. Heeds properly executed and acknowledged, from the' devisees and from the trustees in the marriage settlements of two of them, Mrs. Sayre and Mrs. Farrington, were subsequently tendered, but the purchasers being still advised by their counsel'that they could not safely accept the title that was offered, refused to complete the purchase, and, treating the contract as rescinded, demanded the return of their deposit.
• The questions of law that arise from the .facts, naturally range themselves under two general heads of inquiry.
1. Were the defendants, the purchasers,'bound to accept the title that was offered, the validity of which is, in our judgment, the sole issue made by the pleadings ?
2. If the title was defective and a good title can now be made, ought we to compel the defendants to accept it ?
The title which the defendants were required to accept was derived from three sources: 1. The deed from the administrator with the will annexed; 2. That from the children and devisees; 8.' That from the trustees in the marriage settlements; and if these conveyances, separately or combined, would have given to them the clear and absolute title which they had the right to demand, the execution of the contract must now be decreed, since there has been no unreasonable delay in seeking its performance.
As the title of the testator is not disputed, the first and most important question relates to the authority of the administrator to sell and convey. Before we proceed to consider the general question whether a power to sell lands, given to executors, can in any case be exercised by the administrator with the will annexed, there are one or two preliminary questions, suggested by 'the terms of the present will, which we deem it necessary to state and examine. They are, First, whether the power to sell, *397 as created by the will, was a subsisting power at the time of the sale made by the administrator ? Second, if subsisting, whether it is not certain that from its nature it could not have been vested in the administrator ?
The power of sale contained in the will is expressed in very general terms. They are as follow: “ I authorize my executors hereinafter named to sell. and dispose of any part of my real estate, according to their discretion, either at public or private sale, and to give sufficient deeds or conveyances of the same in fee simple to the purchaser or purchasers thereof.” There is no limitation of the time within which the power was to be exercised, and no specification of the purposes of its exercise; nor of the uses to which the moneys arising from a sale were to be applied, yet no one can suppose that the power was. meant to last for an indefinite period, and to be exercised for any purpose that the executors might deem proper; and still less can we imagine that they .were meant to have an unlimited discretion in the application of the moneys that a sale might produce. The testator certainly never meant to give them a power that, by enabling them to defeat for their own benefit all the provisions of his will in favor of his children, was equivalent to a devise to them of his whole real* estate. The general terms of the power must therefore be restricted by construing them in subordination to the other trusts and provisions in the will. The only rational construction is that the power was not meant to be exercised at all, unless its execution should become necessary, or be deemed expedient, in the discharge of some other duty, or authority, which the will imposes, or confers, upon the executors.
Upon looking into the will, we find only three distinct objects or purposes, the execution of which might render a sale of the lands necessary or expedient. Had the widow of the testator married again, it would have been the duty of the executors to set aside one-third of the whole estate as a capital, the income of which was to be applied to her use during her life, and to enable them to perform this duty, had the event occurred, the sale of the whole estate might have become neces *398 sary. So by other provisions in the will, as we understand them, the executors were authorized, until all the children of the testator had attained their age, to pay or advance to any of them the whole or any portion of their respective shares, and in the exercise of this discretion, the sale of the whole or of a part of the lands might have been deemed expedient. But the widow never remarried. When the sale was made by the administrator, • she had been dead many years, and at that time all the children had attained their full age. The power of sale, therefore, so far .as it depended upon these provisions in the will, had ceased to .exist.. By another provision, however, the executors and the survivors and survivor of them, were authorized and directed ■ to settle and divide his whole estate amongst his children whenever his youngest child should have attained to lawful age, provided his widow should then be married or deceased; and as the youngest child had attained her age a few months before the sale by the administrator, and the widow had previously died, the contingency had taken place upon which this authority depended. The counsel for the plaintiffs laid much stress upon the circumstance that the property thus to be divided was a mixed fund of real and personal estate, and looking to the terms of the will alone it certainly was so. By the will, the widow took only a life interest in the personalty, but by the codicil it was given, to her absolutely. The codicil was a republication of the will, and it is from the date of the codicil, and by a ref.erence to its provisions, that the will must be construed to speak, and thus construed, the power to settle and divide must be limited to the real estate, and is probably nothing more than an ordinary power to make partition. It may be doubted whether the words, “ settle or divide,” taken alone, would carry with them a power to sell; but as without a sale, a just and equal division might be difficult or impracticable, we do not doubt that, in order to effect such a division, the general power of sale given to the executors might very properly be exercised, nor consequently that it was a subsisting power at the time of the sale by the administrator, provided any person was then .living who was competent tp execute' it. It subsisted, however, *399 'not as an independent power, but only as connected with and subordination to the power to divide, and the two formed in reality an entire and indivisible authority, which from its nature could only vest in, and be exercised by, the same persons or person. It was an entire authority to the executors to make partition of the lands, and to sell the whole or any portion of them, if in their judgment a fair and equal division could not otherwise be made.
Let it now be admitted that an imperative power to sell lands for the payment of debts and legacies, as it converts the lands into personal assets, which the executor as such is to distribute, may be justly regarded as annexed to his office, and as so annexed, may pass to the administrator, with the will annexed, a power to make ,a partition of lands, has assuredly no connection with the office or duties of an executor, nor is its nature altered in any respect by the addition of a power of sale which is to be used only as a mode or instrument of division. The power thus to divide and sell may indeed be given to executors, but in its execution they act not at all as executors, but wholly as devisees in trust, and it is therefore no more transmissible to an administrator with the will annexed, than had it been given to trustees having no other duty to perform under the provisions of the will. As the power to sell in these cases is simply discretionary, its execution or non-execution resting entirely in the judgment of those who are to make the partition, it has not the effect of converting the lands into personalty, for it is only when the power is an absolute and unconditional direction, that this conversion is held to take place. And as the proceeds of the lands when sold, are to be distributed amongst those to whom the lands themselves are devised, it is as devisees and owners that they receive them, and their respective shares can with no more propriety be denominated legacies, than had the- sale been made by themselves instead of the executors. This exact question arose and was decided in the case of Patton v. Randall, (1 Jacob and Walker, 189.) It is well settled that when lands are directed to be sold for the payment of debts or legacies, and no persons are named in the will *400 by whom tbe power is to be executed, it vests by implication of law in tbe executors. Sucb was tbe frame of tbe will in Patton v. Randall, but as tbe proceeds of tbe lands directed to be sold were to be divided amongst tbe devisees, tbe master of tbe rolls was clearly of opinion tbat tbe general rule was not applicable, and tbat the executors bad no authority to convey. Tbe case of Bentham v. Wiltshire, (4 Mad. 44,) in wbicb a similar decision was made, is still stronger; for in this case there was no express devise of the lands to those amongst whom tbe proceeds of their sale were to be distributed, and tbe decision must have been grounded upon tbe equitable doctrine tbat those to whom tbe entire proceeds of a sale of land are directed to be paid are to be considered as tbe owners, since with tbe aid of a court of equity they may elect to dispense with a sale, and take the fee in their own right.
The conclusion tbat the power of sale, as created in tbe will now before us, could not from its nature have passed to tbe administrator with the will annexed, is greatly strengthened when we inquire in whom, by tbe terms of tbe will, it was meant to be vested, and, construing tbe will by the rules of law, was actually vested when tbe sale was made. Where a power to sell lands is given to executors, ratione officii, and only by their official name, it has been doubted whether its exercise must not be limited to those who prove tbe will; but where it is given to executors by their individual names, or, as in the present will, to executors “hereinafter named,” it is certain that it vests in all who are thus named, whether they prove tbe will or not, by force of tbe will itself; and tbat a devise of tbe power is then construed to take effect precisely in tbe same manner as a devise of tbe legal estate. By tbe terms of tbe will, tbe power to settle and divide tbe real estate, and by a necessary consequence the subsidiary power to sell, was not intended to vest immediately and absolutely. It was not intended to vest at all, until tbe youngest child should attain to lawful age, and was then tó be exercised by tbe persons named as executors in tbe will, “ tbe survivors or survivor of them.” When tbe event happened, tbe condition precedent upon wbicb *401 the existence of the power depended, H. Yan Wagenen was the only survivor of the persons so named, and hence the power, by the very words of the will, with which the rules of law entirely coincide, as certainly vested in him, and in him alone, as .if he had been designated individually by name, as alone competent to execute it. It is true that many years before this time he had renounced as executor, but there is no contradiction or variance in the authorities that a power which an executor takes by force of the will, and not of its probate, is not divested nor affected by his renunciation of the office. When a power to sell lands, whether coupled with an estate, or a naked power, is given to several persons as executors, it may doubtless be executed under the revised statutes, by those who take upon themselves the execution of the will, without the concurrence of those who neglect or refuse. (2 Rev. Stat. ch. 1.; Tit. 4, § 55, p. 109.) But this statutory provision, which has at all times been the law in this state, and in its substance is only a re-enactment of a statute of Henry YHL, (21 Hen. 8, c. 4, Evan’s Brit. Stat. p. 360,) while it admits the rule of the common law to be such as we have stated, has never been construed as divesting the estate or power of an executor who has neglected or refused to qualify ; nor is it applicable at all, when the only surviving executor is one who has thus neglected or refused. This is a case for which the statute has wholly omitted to provide, and which the rule of the common law must therefore continue to govern. That the existing law in England, notwithstanding the law of Henry YIIL, is such as we have stated, is proved by the language of all the text writers of authority, and b.y the cases to which they refer. (1 Powell on Dev. 208 ; Sugden on Powers, 272; 1 Chance on' Powers, 613, 614.) And in this state the decision of our supreme court in Jackson v. Gibbons, (5 Wendell, 224,) we think may be justly relied on as a controlling authority. In this case an executor who had refused to join in proving the will -was sued and was held to be liable as a devisee, and we understand the decision of the court as admitting and confirming the general rule that neither a trust estate nor a power in trust, when given to an executor, *402 can be renounced and divested in any other manner than by a release to the co-executors, or a deed of disclaimer.
If, however, it were possible for us to hold that Yan Wagenen, by renouncing the administration of the goods, relinquished and lost his power over the real estate, the only consequence would be, not that the power passed to the administrator with the will annexed, but that it was wholly extinguished. The power of sale in this case, not only from the terms in which it is expressed, but from its nature as merely incidental and subordinate, was plainly and simply discretionary. Its execution was not imposed as a positive duty, but rested solely on the judgment of those to whom the power was given; and we know of no exception to the rule that the exercise of a discretionary power, as implying a personal trust and confidence, is limited to those to whom, by the terms of its creation, it is expressly given.. The rule, which has been acted upon in cases far too numerous to be quoted, is laid down as universal by Sir William Grant in Cole v. Wade, (16 Vesey, p. 42,) and was approved as such by Lord Eldon in Watler v. Maurice, (19 Ves. 425.) There is indeed a class of cases somewhat analogous to the present, which at first view may seem an exception from the rule, but when considered, so far from weakening the rule, they are found to add to it illustration and force. Where a power of appointment is given to divide lands, or distribute a fund among several persons, in such shares or proportions as the donees may think proper, the power if unexecuted is not extinguished by the death of the donee, but its execution devolves upon a court of equity. The reason is, that- the power as creating a trust in favor of all who are its objects is regarded as imperative, and is held to be discretionary only as to the shares to be allotted to each, and this discretion a judge in equity, in decreeing the execution of the power, never attempts to exercise. The power as discretionary has ceased to exist, it is only as an unexecuted trust that it is enforced. (Dominick v. Sayre, April 20, 1850.) (a)
*403 So far we have considered the power of sale as a naked power in trust, not coupled or clothed with, any estate or interest in the lands, but such, ye are satisfied, is not' its true construction. The intention of the testator was, that the executors should take a legal estate to which the power of sale should be annexed. We are not, indeed, prepared to say, as the counsel for the defendants contended, that they took, or were intended to take any estate during the lifetime of the widow; but upon her death, during the minority of any of the children, a legal estate in remainder is certainly given to them, not indeed by express words, but by a necessary implication. It is given as essential to the discharge of the duties and trusts which, until all the children attained their age, they were required to perform. A similar construction was given to the will in Brewster v. Striker, (2 Coms. 19,) and upon an attentive comparison, the cases, it seems to us, are not distinguishable. Upon this construction of the will, the assertion that the power of sale given to the executors passed to the administrators with the will annexed, seems to be wholly stripped of argument or authority.
Admitting that under the revised statutes, such an administrator may execute every power, including, those which relate to real estate, that the will confers upon the executors, the statute, in the' broadest interpretation of its terms, does not say that he shall succeed to the estate as well as to the powers of the executors; nor can it therefore be understood to mean that he shall succeed to powers that are connected with and inseparable from the estate. When lands are devised,to executors, with a power of sale, it has never been doubted that the power was annexed to their estate, and hence, in opposition to the general rule, which obtained where a naked authority only was given, it has invariably been held that the power, when given to two or more, might be executed by the survivor, although no terms of survivorship are used in its creation. And this, plainly upon the ground that the power passes with the estate. (Coke Litt. 51 b, 112 b, 181 b; Chance on Powers, 649, 658.)
Nor is this all. A trust estate, whether vested in executors *404 or in other trustees, by the common law, was subject to the same rules of inheritance and succession as other legal estates, and hence, upon the death of the sole or surviving trustee, it passed, according to the character of the estate, to his real or personal representatives, with all the trusts and powers, except such as were discretionary and personal, that were originally attached to it. The executor or heir, taking the estate, became a trustee in the same sense as his testator or ancestor. To these rules of law the supposition that a power of sale, given to executors, when coupled with an estate or interest, if unexecuted, will pass to the administrator with the will annexed, is directly repugnant; and accordingly the English books will be searched, in vain for any intimation that such a doctrine has at any time been held or advanced. It is true that the revised statutes have changed very materially the rules of the common law as to the transmission of trust estates. A trust estate, upon the death of a surviving trustee, no longer passes to his representatives, real or personal, but the trust, if unexecuted, vests in the court of chancery, and with all the powers and duties, (such are the express words of the statute,) of the original trustee. (1 Rev. Stat. 730, § 68; 2d ed. p. 724.) There is no exception of trust estates created by devise and vested in executors, and it would be most unreasonable to suppose that any such exception was intended. The revisers, in their note,to this section, explained the reason of the alteration which they propose, and point out in detail the very serious inconveniences that had been found to flow from the existing law, (3 Rev. Stat. ed. p. 587,) and these are inconveniences that may arise in every case, where a trust estate that may endure beyond the lives of the trustees is permitted to pass to the representatives of the survivor. We cannot believe, therefore, that any such case, much less a large class of such cases, was meant to be excepted. A very large proportion, probably a majority of trust estates, are created by will and vested in executors, and by excepting them from this salutary change of the law, the main intent of the legislature in its adoption would be defeated. Nor, by admitting the exception would any thing be gained to the argument of the plain *405 tiffs, since the only effect would be, that, in the excepted cases, we should go back to the common law, and be compelled to hold that a power of sale annexed to a trust estate in executors, passes, upon the death of the survivor, to his heirs, devisees, or executors, and not to the administrator of the original will.
Let us now apply the observations that have been made to the present case. Upon the supposition that there was an im mediate devise of the real estate to the executors, which took effect upon the death of the testator, and upon the further supposition, that from the refusal to act of the two executors, Osborn and Yan Wagenen, the estate devised remained solely in the widow; then upon her death, as one or more of the children were then infants, it vested by force of the statute in the court of chancery, with all the powers concerning it that were given by the will to the executors; and although the power of sale, as connected with and subordinate to the power to settle and divide the estate, from its nature as discretionary may have ceased to exist, yet in making a partition it might still be exercised by the court of chancery by virtue of its own jurisdiction.
If we adopt that which seems to us a, more reasonable .construction of the will, that no estate was given to the executors until the marriage or death of the widow, then upon her death an estate for a term of years, that is, during the minority or until the death of the children then under age, vested in the sole surviving executor, Yan Wagenen, and if it was divested by his renunciation as executor, the power of appointing a new trustee to whom the estate would pass, devolved under another provision in the revised statutes upon the court of chancery, (1 Rev. Stat. 710, § 71,) but the trustee so appointed would not have succeeded to those powers of the executors that were merely discretionary.
And lastly, assuming, as, were it necessary, we probably should decide, that the estate of Yan Wagenen was not divested when he renounced his office, then when the youngest child attained her full age, he alone was competent to settle and divide, and if he deemed it expedient, to sell the estate; and although his estate in the lands has terminated, it is probable *406 that this power still remains in him, unless by the delay in its execution it has ceased to exist.
It is not necessary for us, nor would it probably, be expedient, to decide which of these hypotheses is the correct exposition of the law, but that one of them is so we do not hesitate to decide, nor, consequently, that the power to sell the lands as created by the will, never vested, and from its nature could not vest,, in the administrator with the will annexed. The sale and conveyance made by him were wholly void.
Having arrived at this conclusiqn, it might seem unnecessary that we should consider at all the general question, whether in any case where an express power to sell lands is given to executors, it will pass, when unexecuted, to the administrator with the will annexed; but as this question was very ably and fully discussed, and as the interests of the public require that it shall be finally settled, and upon '& review of our decision in a higher tribunal this settlement may be obtained, we have not shrunk from the labor of its examination, nor shall we decline to state the process of reasoning that has led us to the opinion that we have formed and shall express.
To enable us to consider the question, we shall assume that construction of the will to be correct upon which the counsel for the plaintiffs forcibly insisted, namely, that the power of sale as created by the' will is imperative, and operated as an out and out conversion of the lands into personalty, and pro hac vice, we make the further concession that the respective shares of the children in the proceeds of a sale may be justly treated as pecuniary bequests. And the inquiry then is, whether the power, thus construed, devolved upon the administrator so as to enable him to give to the purchasers the clear title for which they contracted.
The argument in favor of his authority is- founded partly upon the provisions of the revised statutes, and, partly', upon the rules of the common law.
The section of the revised statutes which is relied upon is in these words: “ In all cases where letters of administration with the will annexed shall be granted, the will of the deceased shall *407 be observed and performed, and the administrators with such wills shall have the same rights and powers and be subject to the same duties as if they had been named executors in such will(2 Rev. Stat. 72, § 22 ; 2d ed. p. 16 ;) and certainly if these words are to be understood in the full extent of their literal meaning,' the argument founded upon them is irresistible. It is a syllogism as conclusive as it is brief. Every administrator with the will annexed has the same powers that he would have had if named as executor in the will. The present administrator, if so named, would have had a power to sell the lands. Ergo, &c. The argument, however, thus stated, proceeds entirely upon the supposition that the words of the section are to be understood in their most unrestricted sense, for if a restriction is admitted to be necessary, it will then remain to be proved that the case falls within the limited construction that we are compelled to adopt. We are not aware, nor can we believe, that it has ever been contended that the general words of the statute are to be understood in their broad and literal sense, and the supposition that they are so it is certain would lead to manifold absurdities. It would vest in the administrators’ powers purely discretionary, and powers over the real estate, such as a naked power of appointment or partition, having no connection whatever with the office and the duties of an executor; and it might even revive in the administrator a power of sale or partition that the executor had previously exercised. The judicious counsel for the plaintiffs was very far from insisting upon a construction of the statute that would embrace any of the cases that have been stated; on the contrary, he candidly admitted that its rational interpretation would require us to impose some limitation upon the generality of its terms. But he contended that its construction ought not to be limited to those powers of an executor, which relate solely to the administration of the personal assets in the strict sense of the term, but should be extended to embrace every power by the exercise of which the real estate may be converted into a fund for the payment of debts or legacies, and this upon the ground that the distribution of every fund created for such purposes properly belongs to the *408 office of an executor. Its distribution is a duty which the common law imposes upon him in his character of executor, and which the statute should therefore be construed to impose upon an administrator who succeeds to the office and its functions. We shall not deny that this construction of the statute would be highly reasonable were its provisions wholly new, or if, although founded on existing law, they involved such a change of phraseology as of necessity to require a different interpretation ; but this construction, reasonable as it seems, must be rejected, if the section we are considering, so far from being entirely new, was a mere revision of an existing law; and it is certain that the-change of phraseology was not designed to alter the construction. If by the law of the state, as it stood before the revision, the powers of an administrator with the will' annexed wer'e strictly confined to the personal assets, in the proper sense of the term, excluding him from the exercise of any power over the real estate, they must continue to be subject to the same limitation until the legislature shall otherwise determine.
That no change of the law, as it then stood, was intended by the revisers, we regard as entirely certain, and as the section was enacted in the very words in which it was reported, it is a reasonable, if not a necessary inference, that no change was intended by the legislature. On examining the original reports of the revisers, we shall find that they were exceedingly careful, as the proper discharge of their duties required them to be, to designate as “ new” every section, sentence, and place, which was designed to vary in any degree the construction of the law then under their revision, and that, when the alterations which they made were understood by them, and were meant to be understood by the legislature as purely verbal, they confined themselves to a simple reference, without any remark, to the particular section which in its revised- form they meant to be re-enacted. (3 R. S. p. 421, 2d ed.) In their original report, this reference, and nothing more, is appended to the section under description, “§ 21, act concerning executors, vol. 1, R. L. 316 ;” and we doubt not that this was understood by the legislature as equivalent to a declaration that the section as reported *409 was a mere revision, without any change in the substance and meaning, of that to which the reference was given ; and that it was with this understanding the section was passed. Nor is this all. Had we no such evidence of the actual intent of the legislature not to alter the existing law, it would still be our duty to rest in that conclusion. Eor nearly half a century, it has been a cardinal and' controlling maxim, that in the construction of a revised act, a mere change in the language shall not be regarded as evidence of an intention to vary the construction, unless the change is such as to render that intention manifest and certain. (Chief Justice Spencer in Taylor v. Delaney, 2 Caines’s Cases in Error, 151; Chancellor Kent in Goodill v. Jackson, 20 Johnson, 722.) It was in the court of errors that a rule of interpretation so eminently judicious was first established, and although cases may since have occurred in which it has been violated, it has certainly never been reversed or abandoned. It is now the rule,which, as j udges, we are bound to follow, and we add that it is especially in the construction of the revised statutes, where the changes in phraseology are so frequent as to have changed entirely the outward form of the acts which are revised, that the observance of the rule is a necessary and paramount duty. Its abandonment or frequent violation would open a perennial source of confusion, uncertainty, and litigation.
Let us then apply the rule in the present case. Its meaning undoubtedly is, that the construction <_>f a revised statute is not to be varied from that which it had pi-viously borne, provided the words used in its revised form admit of the same interpretation as those in the original. It -u admitted by all that the words of § 22, must be understood in a restricted sense, and certainly there is no difficulty in restricting them to mean that the rights, powers, and duties of an administrator with the will annexed, in relation to that personal estate over which alone an executor as such has any control or dominion, shall be the same as those of an executor. An executor, as such, has no estate in the lands of the testator, and no authority to dispose of them. When he takes an estate, it is as a devisee, and when an authority, as the donee of a power; but his rights, powers, and *410 duties, in relation to the personal estate, its collection, investment, sale, and application to the payment of debts and legacies, belong to him in his character as executor. They are attached to his office, and inseparable from it. It is to these therefore, and these only, that the legislature may well have intended that an administrator with the will should succeed, and if such was the law of the state before the revised statutes were adopted, we are clearly of opinion that it was not meant to be altered, and has not been altered.
We have seen «that section 22 in the revised statutes is a revision of section 21 in the act concerning, executors in the revised laws of 1818. This latter section was first enacted in the same words in the revision of 1801, (1 Rev. Laws of 1801, p. 541,) and was adopted with a slight addition, plainly not intended to affect the sense, from a provision in an act of 1787. (Laws 1787, 1 Greenl. p. 868, § 16,) which provision was a mere re-enactment of a provisory clause in a statute of Charles II., the original statute of frauds. (22-23 Charles II. c. 10, § 19.) A comparison of these various enactments is not requisite to be made, since it is quite certain, as Chancellor Walworth has observed, (25 Wend. 233,) that they were not designed to effect, and have .never been construed as effecting any change whatever in the rules of the common law. So far from altering or declaring the powers and duties of an administrator with the will annexed, the sole design of the proviso in the statute of frauds was to continue and preserve them. It is to the com.mon law, therefore, that we must look for an answer to the question whether a power to sell lands, given to an executor by express words, even when limited to the payment of debts or legacies, will vest, when unexecuted, in an administrator with the will annexed; or before the law was altered by the revised statutes, was construed to pass to the executor of an executor, in whose place an administrator with the will is now substituted. And after a diligent examination of the authorities, we are constrained to express our great surprise that such a question has ever been raised. The law of powers is indeed intricate and perplexed in no ordinary degree, but if it contains a. *411 single proposition that may be regarded as established beyond the reach of doubt or controversy, it is, “ That an express power to dispose of lands, no matter for what purpose or by what instrument it is created, is limited to the persons or person to whom it is given, and can never be exercised by the representatives, real or personal, unless they are expressly or impliedly designated as donees of the power.” (1 Chance, 378, or 372; Sugden on Powers; Sir Wm. Grant in Coles v. Wackle, 16 Vesey, p. 42.) In other words, such a power, when not clothed with an estate or interest, is not descendible or transmissible, but terminates with the lives or according to the terms of its creation, with the life of the survivor of those in whom it is vested. There is no exception from the rule thus stated; and it therefore necessarily follows, that when a power to sell lands, even for the payment of debts, is given to executors, if it passes to a surviving executor at all, it ceases upon his death, and cannot be exercised by his executor when he makes a will, or, when he dies intestate, by an administrator with the original will annexed. It is true that when the power is accompanied with a trust, as when created for the payment of debts or legacies it necessarily is, the trust is not extinguished by the termination of the power, but will be enforced by the court of chancery, not, however, by requiring a sale to be made by the executor of the executor, or by the administrator with the will, but by compelling the heir of the testator to whom the legal estate has descended, to make or join in, the necessary conveyances. Such has been the law for centuries past, even from the time of the year books. It is established as such by an nnbroken series of decisions, and is recognized as such by all the text writers of authority; the only writer, so far as we have been able to discover, who has intimated a dissent from the prevailing doctrine, is Mr. Hargrave in one of his notes to Coke upon Littleton, but that, in this instance, this very learned writer mistook the import of the authorities to which he refers, Mr. Chance, in his elaborate treatise upon powers, has' clearly shown. (1 Coke Litt. 113, a, Hargrave’s note; Chance on Powers, 658, 681.) To show- with what *412 entire certainty the law is established, we shall briefly refer to a few of the cases.
In a case' in the year books which is quoted by Mr. Chance, it was solemnly decided by the judges in the exchequer chamber, that where the testator directed his lands to be sold by his executors, a sale made by the executors of the surviving executor was void, and this upon the ground that the power was unconnected with the office of executors. So in another case from the year books, of which a translation is given by Mr. Sugden in an appendix to his work on powers, all the judges seem to have agreed that, where a will contains a direction or power to executors to sell, if no executors are appointed, or those appointed refuse to act, no sale can be made either by the ordinary, or by the administrator with the will annexed. (Sugden on P. App. p. 531.) And Mr. Chance refers to a still earlier case in the year books, as having decided the same point. (Goodchiefs case, 49; Edw. 3, fo. 16; 1 Chance, 621.) It does not appear in these early cases for what purpose the lands were directed to be sold, but any possible doubt that might arise from the omission is removed by the cases to be next cited. In Ashby and others v. Doyle, (1 Chan. Cases, 180,) the bill was filed by the creditors of a testator, who had directed his executors to sell his lands for the payment of his debts. The executors had all died, leaving the power unexecuted, and the bill was filed, not against the executors of the surviving executor, or the administrator with the will annexed, but against the heir of the testator. The court decreed a §ale, and that the heir should make the proper conveyances. A similar decision was made in Garfoot v. Garfoot, (1 Freeman, 173.) In Yates v. Compton, (2 P. Williams, 308,) the testator directed a sale of the laud for the payment of certain annuities, which were legacies in the proper sense of the term. The bill was filed by the administrator with the will annexed, in behalf of the annuitants against the heir, and the heir was decreed to convey. If the administrator could himself have sold and conveyed, the bill was useless, and must have been dismissed.
Such being the uniform tenor of the authorities, (and it is *413 needless to multiply citations upoma question which in England has never been a subject of dispute,) it will naturally be asked, upon what ground it has ever been supposed that an express authority to sell lands will, in any case, devolve upon an administrator to whom the execution of the will in . other respects is entrusted; and the reply is, that the mistake has arisen from confounding the cases in which the power of sale is given to the executors in express terms, with those in which it vests in them solely by implication of law. It has already been stated, that where the will contains a positive direction to sell lands for the payment of debts or legacies, and no persons are named upon whom the duty shall attach, the duty and the power are cast by implication of law upon the executors.' The ground of the implication is, that the testator probably intended that the power should be executed by those to whom the distribution of the fund arising from a sale would properly belong, and as this reason applies with equal force to every person upon whom the general duty of executing the will may be imposed, both Mr. Powell and Sir Edward Sugden have intimated that the power of sale, when unexecuted, would be construed to vest in the executor of the surviving executor. Neither of these' learned writers, however, has referred to any adjudged case in support of the proposition, and it seems to be directly contradicted by the decision of the chancellor in Lorton v. Lorton, (Freeman Chan. Cases, p. 136,) and of the House of Lords in the leading case of Pitt v. Pelham, 1 Ch. Ca. 175; (S. C. in House of Lords, T. Jones, $5.) In each of these cases no persons were named in the will to execute the power, but in order that the trust might be fulfilled, it was not an executor of the surviving executor, or the administrator with the will, but the heir that was decreed to convey..
Let it however be admitted that when a power of sale vests in an executor by implication of law, its execution may properly devolve upon the executor of an executor, and with us upon an administrator with the will annexed; such executor or administrator, it is evident, takes the power not by representation, or as attached to his office, but simply as its donee, by virtue *414 of a presumed intention of the testator. This presumption, however, is wholly excluded when the power is given to the executors by express words. The opposite presumption then prevails, that had the testator meant the power to be executed by any persons in addition to those he has named, that intention would have been declared; and hence, the law is settled that the intention that the power should pass to any other persons than its immediate donees, can never be held to have existed, unless it has been declared. Such is the foundation of the rule, which, we repeat, is universal, that a power is never transmissible, unless it is made so by the terms of its creation.
We conclude this branch of the discussion, by expressing our entire conviction that § 22, in the revised statutes, ought no more to be construed as enlarging or altering, in any respect, the common law powers of an administrator with the will annexed, than the original proviso in the statute of Charles II.; and that, by the common law, such an administrator is never permitted to execute a power of selling lands, which, by the express terms of the will, is given to the executors. We add that Chancellor Walworth, in his elaborate opinion in Conklin v. Egerton’s Administrators, although he has omitted to state the process of inquiry by which he was led to the result, has expressed in unequivocal terms the same conviction. Other considerations remain to be stated, which, had any doubts remained on our minds as to the true construction of § 22, must have removed them. The supposition that the word “ powers” in that section may be construed to embrace powers over the real estate, is inconsistent with many other provisions in the revised statutes, and such is the repugnancy, that either the plain import of the provisions to which we refer must be altered by a violent effort of judicial construction, or §22 must be understood in the limited sense that we attribute to it. There is no other mode by which the apparent contradiction can be reconciled. We shall not enumerate all the provisions to which our observations refer, but shall confine ourselves to the mention of two which were not cited upon the argument.
We have seen that, by section 68, in the article of uses and *415 trusts, when a power to sell the lands is attached to a trust estate, the entire trust, including the power, upon the death of the surviving trustee, vests in the court of chancery; and we have shown that the section comprehends devises to executors as well as to other trustees ; and, so far as we are informed, it has not hitherto been denied that such is its true and necessary construction. But section 102, in the article of powers, declares, that the provision in section 68 shall apply equally to powers in trust and their grantees. A power to sell lands for the benefit of creditors or legatees is assuredly a power in trust, and we do not understand how the word “equally” can be satisfied, unless by holding that section 102 applies to all trust powers, -just as section 68 to all trust estates. An exception can with no more propriety be allowed in the one case than in the other. The exception of trust powers created by will would be purely arbitrary, nor could judges be excused who should admit a distinction which the legislature has notpnade, and which, without a pretext of reason would violate the uniformity of the law. It is manifest, that when the trust is created for the same purposes, and the moneys arising from its execution are to be applied to the same uses, there are exactly the same reasons for devolving its execution upon the court of chancery when it is attached to a mere authority as when it is coupled with an estate.
Again; the provisions in section 22, it is certain, apply, and were intended to apply, to all cases in which an administrator with the will annexed may be appointed, and such an administrator may be appointed, as well when no executors are named in the will, as when those who are named renounce or die. Hence, should a will, in which no executors are named, contain a positive direction to sell the lands for the payment of debts or legacies, the power, if section 22 embraces powers over the real estate, would certainly devolve upon the administrator with the will annexed. But section 101, in the articles of powers, “ declares,” that when “ a power in trust is created by will, and the testator has omitted to designate by whom the power is to be exercised, its execution shall devolve upon the court of. *416 chancery.” It rarely happens that a trust power created by a will does not involve a sale of the lands to which it relates, and those, we doubt not, were the very cases in the mind of the legislature. By excepting them, section 101 would be reduced nearly to a dead letter. But if the exception is not made here, it must be made in section 22, and it can only there be made upon the ground that the term “ powers,” as there used, is limited to powers over the personal estate.
We shall now advert to a circumstance that lends great additional force to the preceding observations. The chapter “ Of Beal Property,” although the first in the order of arrangement in that part of the revised statutes to which it belongs, was in reality the last as prepared by the revisers and acted upon by the legislature. The subsequent chapters in the same division had not only been previously reported, but previously adopted. Hence, chapter 1 contains many references to the subsequent chapters, and there is throughout a clear and manifest intent to make its provisions correspond with those which had been already adopted. Had section 22, in chapter 6,.been understood by the revisers and by the legislature as embracing any class of powers over the real estate, we must believe that this class, in order to avoid a-positive discrepancy, would have been excepted in sectionsT01 and 102, in the article “Of Powers.” The exception was not made, because section 22 was not meant to be thus understood, and powers over the real estate were not excepted in section 22, because it was not foreseen that it would ever be construed to embrace them.
The result of our inquiry is, that were it possible for us to construe the will of the testator as containing a positive direction,, to'sell the lands for the payment of legacies, we should still be constrained to say that the administrator had no authority to make the sale, and that the purchasers were not bound to accept his conveyance.
We proceed then to the next inquiry, whether the purchasers would have acquired a good title, had they accepted the conveyance from the children and devisees. There could have *417 been no hesitation in giving an affirmative reply to this question, had the entire fee remained in the children as devised by the will; but two of the daughters, Mrs. Sayre and Mrs. Farrington, had conveyed their respective shares to trustees, and these conveyances, it is alleged, had created difficulties which were not to be overcome. The agreement for the purchase of the lots was entire, and it is not denied that it ceased to be obligatory, if, in respect to any one of the shares, the title was defective. We begin with the marriage settlement, for such the conveyance was, of Mrs. Sayre. It is needless to state its provisions in detail. It is sufficient to say that the rents and profits of the property conveyed are to be paid to Mrs. Sayre, to her separate use during the joint lives of herself and her husband, and that in the event of her death, without devising it, in the lifetime of her husband, there is a contingent limitation of the fee to her children then living. No power of revocation is reserved to her or to her husband, and no power of sale or disposition is given to the trustee. It is therefore manifest that if this settlement was valid, the share of Mrs. Sayre was inalienable during the lives of herself and her husband, and consequently that the conveyance which the purchasers were required to accept, was so far inoperative and void. It is not pretended that the settlement is void upon its face. Its provisions, it is conceded, are perfectly legal, but the objection which they raise, it is insisted, is repelled by the admitted fact that Mrs. Sayre was an infant at the time of the execution of the deed, and upon this ground we are required to treat it as absolutely void, and therefore as not affecting in any degree the legal capacity of Mrs. Sayre, by uniting with her husband, to convey the fee. This reply to the objection, we think, for several reasons, is insufficient.
We shall not enter upon the question which was so fully and learnedly argued by the counsel of the parties, namely, whether the covenant which the deed of settlement contains upon the part of the husband for further assurance, operated by way of estoppel to pass the title which he subsequently acquired as tenant by the curtesy. This is a technical question of no slight *418 difficulty, but according to our views of tbe evidence and of the law, it will not be necessary to consider it. The question admits by implication that the deed was void when executed, and that in consequence of its invalidity, the husband acquired an estate upon which his covenant could operate. It is upon different grounds that we place our opinion that the fact that Mrs. Sayre was under age when she executed the marriage settlement is not a sufficient answer to the objection that by the terms of the settlement she was incapacitated from conveying the fee; In the first place, we are unable to perceive that the isolated fact of her infancy has any bearing upon the question we are now considering, namely, whether the purchasers were bound to accept the title that was offered to them. They certainly were not bound to accept a title that was manifestly bad upon the face of the documents exhibited, unless the fact by which alone the apparent objection could be removed was then disclosed to them. It is not averred-in the bill, nor admitted in the answer, nor established by the proof, that this necessary communication was then made, and we have no right to presume that it was. Upon the pleadings and proofs as they stand, we are bound to say that the purchasers were justified in rejecting the title. It was apparently defective, and they were justified in believing that it was so in reality. But we do not stop here. Assuming, as was perhaps the case, that the fact that Mrs. Sayre was under age when she executed the marriage settlement was disclosed or otherwise known to the purchasers, it by no means follows that they were bound to accept the conveyance of herself and husband as a sufficient title. Their knowledge of her infancy was not alone sufficient to create this obligation. The entire argument of the counsel for the plaintiffs, upon this branch of the case, proceeded upon the assumption that the deed of an infant is void in its origin, and must be treated as a nonentity whenever the fact of infancy is admitted or proved." But such assuredly is not the law.
The deed of an infant, whether a conveyance at common law, or under the statute of uses, or a statutory grant, is not void, but voidable only. It may be avoided by the infant when he *419 attains his age, and by those who are privy in blood or in estate, but it passes a title which a stranger is never permitted to impeach, (Coke Litt. 218 a; 8 Reports; 42 b.; Com. Dig. Tit. Enfant, C. 7; Jackson v. Todd, 6 John. Rep. 257 ; Boston Bank v. Chamberlain, 13 Mass. 220 ; Zouch v. Parsons, 3 Burr. 1804; Bool v. Mix, 17 Wend. 119; Eagle Fire Company v. Lent, 6 Paige, 635; Tacker v. Moreland, 10 Peters, 73 ; Bingham on Infancy 33, 34; 2 Kent’s Com. 5th ed. 234, 236.)
Hence it is a material inquiry in this case, whether the election of Mrs. Sayre, after' she attained her age, to repudiate and disannul the marriage settlement, was manifested by any positive act upon which the purchasers could safely rely.. It maybe thought that her acknowledgment of the conveyance to the purchasers was sufficient proof of this election, and this con-, elusion might possibly have been adopted were it not certain that such was not the construction which the parties intended should be given to their act. So far from meaning to repudiate the marriage settlement, they virtually insisted upon its validity. They insisted upon its validity, by requiring the purchasers to accept a conveyance from the trustee, and by submitting to-them an order of the vice-chancellor of this circuit, founded upon their own petition, authorizing the trustee, in his character as such, to join in the sale, and ratifying and confirming the conveyance which he had already executed. It is true that they were under a strange error in supposing that the vice-chancellor had any jurisdiction, in such a proceeding, to reform the marriage settlement, by clothing the trustee with a power of sale, which its provisions denied to him; but it is evident that they and all the plaintiffs acted in the belief that the vice-chancellor possessed this authority, and that the purchasers would be bound.: by its exercise. They meant, therefore, not to annul the marriage settlement, but by the aid of the vice-chancellor, only to vary its construction and. legal effect. They meant, by converting the lands into money, to alter the subject of the trust, not to destroy the trust itself. On. the contrary, the order of. the vice-chancellor contains express provisions that the proceeds arising from the sale of the share of Mrs. Sayre, should be re *420 ceived and held by her trustee under the deed of settlement, subject in all respects to its trusts and provisions, adding these ■remarkable words, “ in the like manner and to the same intents and purposes as the interest of the said Blanche, (Mrs. Sayre,) in the title and estate of the said lots has been hitherto and is now held under the same deed.”
Comment upon these words is surely needless. Mrs. Sayre was now of full age, and had been so for several months, and we have here, in an order granted upon her own application, a plain declaration that her original estáte in the lots contracted to be sold was then vested in, and held by, her trustee, with her’ consent, under the marriage settlement. It is possible that owing to the coverture of Mrs. Sayre, the acts and declarations to which we have referred may not amount, in judgment of law, to a positive confirmation of the deed of settlement; nor is it necessary that we should determine that such is their effect; but we feel no difficulty in saying, and are bound to say, that they have created doubts that we are not competent to solve, and have cast a cloud over the title that no court of law or equity can mow. dispel. They have raised a question that cannot, during the lives of Mrs. Sayre and her husband, be finally determined. We can make no decree that would be binding upon the afterborn children of Mrs. - Sayre — no decree that would preclude them, in the event of her death during the lifetime of their father, from asserting their own title under the marriage settlement in opposition to that of the purchasers. And by compelling the purchasers to accept a title thus environed with doubts, and liable to be impeached, we should depart from every principle by which courts of equity, in decreeing a specific performance, have hitherto been governed.
One or two material observations, on this branch of the subject remain to be made. The bill contains an averment that no act had been done or caused to be done by Mrs. Sayre after she attained her age, in confirmation of the marriage settlement, and unless the acts that have been cited are to be considered as evidence of such a confirmation, this averment-may possibly be true; but the bill contains no averment that Mrs. Sayre, by any *421 positive act, had disaffirmed the settlement. Yet unless we greatly mistake the existing law, such an averment was necessary to he made, and necessary to be proved. The deed of an infant is not, as a matter of course, superseded and annulled by the mere execution, after he attains his age, of another conveyance, even to a purchaser for value. The feoffment of an infant, it is certain, could only be set aside by the actual entry of the infant when of age, or by a proceeding upon the special original writ of “Dam fait infra aetatem,” and the only doubt has been, whether this rule of the common law could be properly extended to conveyances operating under the statute of uses. In the case of Jackson v. Todd, (6 John. R. 257,) this question was ably and learnedly argued by the counsel, but as we understand the case, was not decided by the court. In the much more recent case of Bool v. Mix, (17 Wend. 119,) the question was again agitated, and upon reasons that appear to us quite, satisfactory, it was then determined that a deed of bargain and sale made by an infant is not avoided by his execution and delivery to a third person of a similar conveyance after he has attained his age; but that to enable him to pass the title by a second conveyance, his previous actual entry upon the lands is an indispensable requisite, and that this rule is applicable in all cases, except where the infant has retained the possession of the lands, or at the time of the execution of the second deed, they are wholly vacant.
Since the revised statutes, every conveyance which is made directly to the party in whom the title and possession are meant to be vested, operates not as an executed use but as a grant, and such is therefore the proper name and character of the conveyance from Mrs. Sayre to her trustee; but we cannot doubt that the doctrine of the supreme court in Bool v. Mix, is just as applicable to statutory grants as to conveyances under our former statute of uses. Indeed, the reasons for its application are much stronger if a statutory grant of the lands themselves" is to be governed by the same rules as a common law grant of an incorporeal hereditament. Since in this latter case, the law was settled that the infant, when of age, could not divest the *422 title of his prior grantee except by some public and notorious act, equivalent to an entry; until his election had thus been manifested, he could not make a new and valid grant. (Coke Litt. 218 a; Com. Dig. Tit. Enfant.)
- Tbe application of these remarks is made in few words. The lots contracted to be sold were not vacant, but built upon and occupied, and the possession of Mrs. Sayre as a tenant in common had not been retained by her, but had passed to, and was held by her trustee. Hence, could it be properly admitted that no act had been done, or authorized by Mrs. Sayre, to affirm the marriage settlement, still the purchasers were rightly advised that they could not safely accept her conveyance. It would not have protected them against the deed of her infancy, which as against them would still have been evidence, and conclusive evidence, of a subsisting prior and paramount title. It is true the trustee was ready to convey and surrender the possession, but as those acts of the trustee involved a breach of his trust, they would have been just as inoperative and void as the conveyance of the cestui que trust; nor would his acts have derived any validity from the order of the vice-chancellor, which, from the want of jurisdiction apparent upon its face, we regret, but are compelled to say, was a nullity.
As the objections founded upon the ante-nuptial settlement of Mrs. Sayre are, in our judgment, of such a nature that they render it impossible for us to force the title, which they perplex and obscure, upon unwilling purchasers, it may seem unnecessary to consider the question, whether the obstacle created by the post-nuptial settlement of Mr. and Mrs. Farrington was not, at the time the objection was raised, just as insurmountable. Without passing over the question entirely, we shall limit ourselves to a brief intimation of our opinion. The settlement of Mrs. Farrington contains substantially the same provisions as that of her sister. Those provisions are lawful upon their face, and they render the property inalienable during the joint lives of herself and her husband. The deed, however, recites that one of the objects of the trust meant to be created was that the rents and income of the property in case of a sale by the ad *423 ministrator with the will annexed, should be applied to the separate use of Mrs. Farrington during the continuance of her, marriage; and it was contended that this recognition of a-power to sell, as vested in the administrator, operated in respect to the parties to the deed, as a reservation or. creation of. the power, and consequently rendered the conveyance of the administrator, at least as transferring the estate and interest of Mrs. Farrington and her husband, operative and- valid.. .We cannot, however, give this construction and effect to'the recital. We cannot regard it,as evidence of the intention of the parties to grant any new authority to the administrator. It is evidence only of their belief that a power to sell was then vested in him by force of the will of'the testator, and by virtue, of his own appointment, and we cannot understand how this declaration of an erroneous belief could give any validity to acts which the administrator, as such, had no right to perform, or .bind the purchaser, to accept a title which they wer.e. truly advised by their counsel was fatally defective. '■
It was said, however, that should we refuse to construe the recital in this deed as a grant of a new a¡uthority, it would then be necessary to hold, that as a recognition of a power to sell as then existing in the administrator, it raised an estoppel that must have precluded the parties to the deed, and. all claiming under it, from disputing the title which the administrator was. ready to convey; but the reply is, that no such estoppel could ever have been alleged against Mrs. Farrington and .her children. The law has been settled from time immemorial, that a married woman cannot bind herself, or her heirs, by an estoppel arisipg upon a deed, or upon matter in pais. (Coke Litt. 352; Cro. Eliz. 39, .700; Com. Dig. Estoppel C. 2; Smith’s Lead. Cases, 438.)
Nor in our own state, has this rule of tbe common, law been in any respect varied or relaxed. It is'true that under our statutory law, a married .woman, by her deed properly acknowledged, may convey her. estate, but .it is only as a conveyance of her actual present estate that the'deed can operate. Our courts have determined, not only that she is not bound by *424 any covenants that the deed may contain, although expressed in her name as well as-in that of her husband, but'that she is not estopped by any such covenant, however express and positive, from asserting a subsequently acquired title to the lands which the deed purports to convey. (Jackson v. Vanderheyden, 17, John. 167; Martin v. Dwelly, 6 Wend. 9.) If a married woman is not estopped by a covenant asserting in positive terms her own right or power to convey, it is impossible to conclude her by a mere recital of the existence of the power in a third person. We are aware that the question, whether an estoppel can arise from the covenant of a “feme coverte,” has been otherwise determined in Massachusetts, (Colcord v. Swan, 7 Mass. Rep. 29,) and in Ohio, (Hill v. West, 8 Ohio Rep. 235,) but the decisions of our supreme court not only command our obedience by their authority, but our assent by the reásons upon which they are founded. We must therefore hold that no satisfactory answer has been given to the objection, that the legal effect of the marriáge settlement of Mrs. Farrington was to render her estate and interest in the lots contracted to be sold, wholly inalienable during the joint lives of herself arid husband. It is true, that by the death of the husband, this objection has ceased to exist, and Mrs. Farrington is now competent to convey an absolute fee; but it is only since the commencement of this suit, that tbe objection has been removed. It subsisted in all its force when the purchasers were required to accept the title to which it applied, and it justified their refusal. As to the order of the vice-chancellor, it was just as powerless to remove the objection, as in the case of Mrs. Sayre.
The only question that remains to be considered is, whether an inquiry into the present condition of the title ought now. to be directed, in order that if we shall be satisfied from the report of a referee that a good title can now be made, we may decree its acceptance by the purchasers. It is not to be denied that it has been a frequent practice in chancery, to make such a reference to a master, and to decree a specific performance when it appears from his report that a good title can be then made, although it may also appear that the title was defective when *425 the contract was to be fulfilled, and even when the suit was commenced; and in the case of Seymour v. Delancey, the propriety, as a general rule, of following this course, was distinctly recognized by our court of errors; but it is manifest that the reasons upon which the practice rests have no application to a case like the present. There can be no fuller investigation of the title than has already taken place. As all the facts are before us, no report is needed to inform the conscience or direct the judgment of the court, and it is the necessary result of the observations that we have made that the principal objections to the title upon which the purchasers relied, still exist, and from their nature cannot be removed. The difficulties created by the marriage settlement of Mrs. Sayre must continue to exist so long as her husband continues to live.
The discretionary power of sale given by the will to the executors, if subsisting at all, is vested in the surviving executor, Yan Wagenen, who was not a party to the contract, and is not a party to the suit; and were it otherwise, this is not a case in which the court could direct a conveyance by a new trustee of its own appointment. The trust, as created by the will, either remains in the surviving executor, or is extinguished. As we are convinced that a good title cannot be made, we shall not direct a reference that we know must be fruitless.
Nor were it certain that a good title can now be made, could we by any proper exercise of our authority compel the purchasers to accept it. Such a decree, in a case circumstanced like the present, would be unreasonable and unjust. When the performance of a contract is resisted upon grounds wholly independent of the validity of the title, and the objections of the purchaser are overruled, or when the purchaser, although doubtful of the title, consents by his answer to accept it, if in the judgment of the court it can be rendered valid, it is doubtless sufficient to warrant the relief that is sought, that a good title can be made within a reasonable time before a final decree is necessary to be pronounced; but when it appears that the purchaser rejected the title that was offered, as insufficient, and upon that ground refused, and still refuses, to complete the con *426 tract, the entire controversy turns upon the validity of his objections, and if they are sustained, we venture to affirm that no precedent for decreeing a specific performance can be found, nor, we add, without a violation of principle can such a decree ever be made. It is true that in an agreement for the sale of lands, time is not of the essence of the contract, since it may be extended by a verbal understanding, or waived by the acquiescence of the parties; but we had supposed that the comprehensive and lucid opinion of Chancellor Kent in Benedict v. Lynch, (1 John. Ch. R. 370,) had exploded the error that time is not merely not of the essence of the contract, but is wholly immaterial. This is so far from being true that time is always material, when either of the parties chooses that it shall be. Each of them has a right to demand the performance of the contract upon the stipulated day, and if the other party is then unwilling, or unable to perform, may instantly elect to rescind' it. By such an election he is wholly freed from the obligations, of the contract, and it therefore involves a plain contradiction to say that a court of equity can subsequently decree its specific performance. The parties themselves may revive a contract abandoned or rescinded, but no court, by its own authority, can resuscitate a contract which, by the lawful act of the parties, or of one of them, had ceased to exist.
Our decision is, that in this case the contract of sale was rescinded by the purchasers for valid reasons. It was rescinded by their demanding a return of their deposit (Pincke v. Curties, 4 Br. Chan. Ca. 329.) In their answer, instead of submitting to the execution of the contract if their objection to the title shall be removed, they insist upon its dissolution as a full defence, and we think it is so.
The bill, upon the several grounds, that have been stated, must be dismissed, with costs to all the defendants.

 Now reported, ante, vol. iii. p. 555.